Larry J. Wulkan (021404)
Jennifer L. Allen (027941)
Adrianna M. Chavez (035011)
**STINSON LLP**
  Firm Identification Number 00462400
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Tel: (602) 279-1600
Fax: (602) 240-6925
Email: larry.wulkan@stinson.com
       jennifer.allen@stinson.com
       adrianna.chavez@stinson.com
Attorneys for Plaintiff Lisa Yearick

J. Scott Halverson
**LAW OFFICES OF J. SCOTT HALVERSON PC**
1761 East McNair Drive, Suite 103
Tempe, Arizona 85283-5056
Tel: (480) 777-7776
Fax: (602) 375-7444
Email: scott@halversonfirm.com
Attorney for Plaintiff Leigha Huber

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Lisa Yearick, individually, as Personal Representative of the Estate of Edward Rudhman, and on behalf of Leigha Huber, statutory beneficiary,<br><br>Plaintiffs,<br><br>v.<br><br>Maricopa County Sheriff Paul Penzone, in his Official Capacity; Sergeant Robert Leatham and Kristy Leatham, husband and wife; Sergeant Ryan Kelleher, an unmarried individual; and Deputy Philip Asiedu and Morcelia Asiedu, husband and wife,<br><br>Defendants. | No.  2:20-cv-00545-SPL<br><br>**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

For their Complaint against Defendants, Plaintiffs allege as follows:

**JURISDICTION AND PARTIES**

1. Plaintiffs bring this action, pursuant to 42 U.S.C. § 1983, for violations of the Fourth Amendment of the United States Constitution, and pendent state common and statutory laws including A.R.S. § 12-611, *et seq*.

2. Jurisdiction and venue are proper in this Court pursuant to A.R.S. §§ 12-123 and 12-401, as the majority of parties are residents of Maricopa County, Arizona, and the events underlying this lawsuit occurred in Maricopa County.

3. Plaintiff Lisa Yearick ("Lisa") is the widow of decedent Edward Rudhman ("Edward"). For all material times, she resided in Maricopa County.

4. Plaintiff Leigha Huber is Edward's mother. For all material times, she resided in Hawaii.

5. Defendants Leatham, Kelleher, and Asiedu (collectively, the "Deputies") were, at all times relevant to this complaint, employed as sheriff's deputies with the Maricopa County Sheriff's Department.

6. Plaintiffs survive Edward, who was shot to death by the Deputies on December 16, 2018.

7. Defendant Paul Penzone is Maricopa County's sheriff and may be held vicariously liable, or otherwise responsible, for the wrongful conduct of his agents, officers, and employees.

8. The Deputies were agents and employees of Maricopa County, through the Maricopa County Sheriff's Office, who, at the time of the events complained of herein, were acting within the course and scope of their employment and under color of law.

9. The Deputies' acts and omissions were done for the benefit and furtherance of their marital communities.

## THE FACTS

10. At approximately 10:22 a.m. on Sunday December 16, 2018, the Deputies, along with two other sheriff's deputies, responded to the home of Lisa and Edward in Mesa, Arizona.

11. Lisa had called 9-1-1 and reported to the call-taker that Edward was suicidal and had a gun.

12. Lisa told the 9-1-1 call-taker that Edward was "distraught" and that she was "scared for his life" and "really, really worried about him" because he was "threatening to kill himself."

13. Lisa also told the 9-1-1 call-taker that she desired: "nothing bad to happen to [Edward], I just want him to get help."

14. Edward had struggled with depression for many years and had recently lost his job.

15. Lisa had closed herself in her bedroom.

16. Edward told Lisa, "I'm not gonna hurt you are you kidding me right now?"

17. While all this was happening, the Deputies arrived and positioned themselves toward the end of the driveway of Edward and Lisa's home, closest to the street, setting up two police cruisers for cover.

18. Sergeant Leatham stood just behind the open driver's side door of his cruiser, with his gun pointing toward Edward and Lisa's home.

19. Non-Party Deputy Robert Normile stood on the right side of Sergeant Leatham's cruiser, behind the open passenger side door. He held a rifle, that fired beanbag rounds, pointing toward Edward and Lisa's home.

20. Deputy Asiedu positioned himself to Deputy Normile's right side, across the boundary wall in a neighbor's yard, with his gun pointed toward Edward and Lisa's home.

21. Sergeant Kelleher lay down on the ground near some shrubs to the left of the cruiser, with his gun pointing toward Edward and Lisa's home.

22. Sergeant Leatham began making announcements over a public address system for Edward to come out of the house without the gun.

23. Edward appeared through the front door and Deputy Normile shouted, "Front door, front door, front door."

24. Edward began walking toward the Deputies with his arms by his sides and his gun dangling from his right hand.

3

25. Edward is left-handed.

26. Deputy Normile described Edward's walk as not "fast paced."

27. Sergeant Leatham told Edward to drop the gun several times, then said "Stop where you are."

28. Edward responded "No."

29. At that moment, Edward was still several car lengths away, and Deputy Normile "was ready to call out 'less-lethal, less-lethal, and fire.'"

30. The purpose of this is to alert other deputies that the sound they will hear is a less-lethal weapon so that other deputies will not automatically begin firing their lethal weapons upon hearing the sound of gunfire.

31. But while Deputy Normile was "in his thought process and in preparation to act," the Deputies began firing their guns, striking Edward multiple times in the torso and once in the head.

32. Edward was still breathing after being shot, but was pronounced dead later at the hospital.

33. At no time did Edward make a furtive movement, harrowing gesture, or serious verbal threat to the Deputies, nor did he brandish his gun or point it at the Deputies.

34. The Deputies gave no warning that they would shoot Edward if he didn't stop and drop the gun, even though it was feasible for them to do so.

## COUNT ONE

**(The Deputies Violated Edward's Rights Under the Fourth Amendment to be Free From the Unreasonable Use of Force and are Liable Pursuant to 42 U.S.C. § 1983)**

35. Plaintiffs incorporate the allegations in the paragraphs above as if set forth fully herein.

36. As a direct and proximate result of these Defendants' wrongful conduct by using excessive and unreasonable force against Edward, Edward's rights under the Fourth Amendment were violated and the Estate of Edward Rudhman has suffered damages.

37. The wrongful conduct of these Defendants was in reckless disregard of Edward's constitutional rights and punitive damages in an amount to be determined by a jury should be awarded to deter and prevent others from acting in a similar manner in the future.

## COUNT TWO

### (The Deputies, and Sheriff Penzone, Are Liable for the Wrongful Death of Edward Pursuant to A.R.S. § 12-611)

38. Plaintiffs incorporate the allegations in the paragraphs above as if set forth fully herein.

39. The Deputies had a duty to use only necessary and reasonable force.

40. The Deputies breached their duties, despite knowing or having reason to know that Edward was or would be inappropriately subjected to an unreasonable risk of serious harm, injury, and death as a result of their actions and/or inactions, as identified by the allegations set forth in the paragraphs above.

41. The Deputies' breaches of their duties caused and/or contributed to cause Edward's wrongful death.

42. The Deputies were, at all times material hereto, acting within the course and scope of their employment and their employer is vicariously liable for their actions.

43. As a result of the Deputies' actions and inactions, Edward's survivors have been deprived of the continued companionship and society of their son and husband, and have suffered and will continue to suffer in the future a loss of love, affection, companionship, care, protection, guidance, as well as pain, grief, sorrow, anguish, stress, shock, and mental suffering, and have suffered damages in an amount to be proven at trial.

## TIER

44. Based on the damages sought in this action, this case is a tier 3 discovery case.

## JURY TRIAL

45. Plaintiffs hereby request and demand a trial by jury.

5

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for damages for judgment against Defendants as follows:

a) General damages in an amount to be proven at trial, as to the causes of action, claims, and theories of relief alleged herein;

b) Punitive damages against the Deputies in an amount deemed just and reasonable as to the causes of action, claims, and theories of relief alleged herein;

c) Costs and attorneys' fees against all Defendants, pursuant to 42 U.S.C. §1988;

d) Such other and further relief which may seem just and reasonable under the circumstances.

RESPECTFULLY SUBMITTED this 13th day of July, 2020.

          **STINSON LLP**

          By: /s/ Larry J. Wulkan
               Larry J. Wulkan
               Jennifer L. Allen
               Adrianna M. Chavez
               1850 North Central Avenue, Suite 2100
               Phoenix, Arizona 85004-4584
               Attorneys for Plaintiff Lisa Yearick

          **LAW OFFICES OF J. SCOTT HALVERSON PC**

          By: /s/ J. Scott Halverson
               J. Scott Halverson
               1761 E. McNair Drive, Suite 103
               Tempe, Arizona 85283-5056
               Attorney for Plaintiff Leigha Huber

# **CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2020, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the District of Arizona by using the CM/ECF System. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system:

>Charles Trullinger
>Sherle Flaggman
>Deputy County Attorneys
>Civil Services Division
>225 W. Madison Street
>Phoenix, AZ  85003
>ca-civilmailbox@mcao.maricopa.gov
>
>*Attorneys for Defendants*

By:  */s/ Kathleen Kaupke*

7